THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| KASWANA A. KELLY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:14-cv-862-WKW-WC |
| | ) | |
| ALABAMA DEPARTMENT OF | ) | |
| REVENUE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Before the court is Defendant's Motion to Dismiss Plaintiff's Complaint (Doc. 15), Plaintiff's Response (Doc. 17) to the motion, Defendant's Supplemental Brief (Doc. 19) addressing recent changes in Alabama law, Plaintiff's Response (Doc. 24) to Defendant's supplemental brief, Plaintiff's Supplemental Response (Doc. 28) to Defendant's motion to dismiss, and Defendants' Reply (Doc. 29) to Plaintiff's supplemental response.  The District Judge referred this case to the undersigned Magistrate Judge "for all pretrial proceedings and entry of any orders or recommendations as may be appropriate."  Order (Doc. 4).  After a review of the parties' filings and supporting evidentiary materials, and for the reasons that follow, the undersigned RECOMMENDS that Defendant's Motion to Dismiss (Doc. 15) be GRANTED.

I.      BACKGROUND

The court has carefully considered the pleadings in this case and all documents submitted in support of, and in opposition to, Defendant's Motion to Dismiss. In her amended complaint, Plaintiff alleges, in pertinent part, as follows:

Plaintiff is from Tuscumbia, Alabama, where her mother still lives. Am. Compl. (Doc. 8) at 2, 3. Plaintiff graduated college "from the University of Northern Alabama in Florence, Alabama[,]" but has been living in Tennessee since 2007 and has been "employed with Anchor Tours in White Creeks, Tennessee[,] for seven years." *Id.*

Plaintiff received a letter from the Alabama Department of Revenue at her mother's address in Tuscumbia, Alabama, on July 2, 2014. *Id.* at 3. The letter stated that Plaintiff owed the Alabama Department of Revenue $1,707.68 in state income taxes for the year 2011. Compl. exh. 1 (Doc. 1-1) at 1. Plaintiff has filed federal income tax returns bearing a Tennessee address since 2007. Am. Compl. (Doc. 8) at 3-4. Plaintiff maintains that the letter she received at her mother's house on July 2, 2014, is the only correspondence she has received concerning the tax debt which the Department asserts she owes to Alabama. *Id*. at 10; Pl.'s Br. (Doc. 24) at 1.

In response to the letter, Plaintiff called the Department on July 10, 2014, and was instructed "to provide additional proof of her residency in Tennessee." *Id.* at 4. Plaintiff thereafter faxed to the Department a Tennessee vehicle registration in her name, a billing history for Nashville Electric Service, a water bill, and a lease from her former apartment.

*Id*.   Subsequently, the Department "placed a tax lien on Plaintiff's credit reports," causing a thirty-nine point decrease in her credit score.  Am. Compl. (Doc. 8) at 5.

Next, Plaintiff and her fiancé, Samuel Robinson, conducted a conference call with an agent at the Alabama Department of Revenue and were told that the information Plaintiff provided was not sufficient to provide proof of residency. *Id*. at 7.  Plaintiff then received a phone call from Defendant Baxley,[1] an employee of the Alabama Department of Revenue's Criminal Investigations Division, stating that collections actions were initiated based on Plaintiff still retaining an Alabama driver's license.  *Id*. at 8.  The following day, Plaintiff spoke on the phone with Defendant Crumbley, the Director of Operations for the Criminal Division of the Department of Revenue.  Defendant Crumbley was unable to provide Plaintiff with satisfactory responses to her charges of various "civil rights violations and criminal allegations," and refused to further investigate Plaintiff's claims.  *Id.* at 11-12.[2]

---

[1] Plaintiff incorrectly identifies the individual Defendants she sues as "David Beckley" and "Eddie Crowley."  Defendants have clarified that these individuals are actually named David Baxley and Eddie Crumbley. Defs.' Mot. to Dis. (Doc. 15) at 1 n.1.

[2] The court would be remiss to not refer in some capacity to what appears to be the crux of Plaintiff's complaint and the purported motivation for all of the various allegations she brings against Defendants. In short, Plaintiff appears to believe that she is the victim of a fanciful conspiracy stretching across multiple states.

> Plaintiff submits to the Court that the efforts in this regard are related to a lawsuit that was filed in the Middle District of Tennessee by [Plaintiff's fiancé], whereas, in those details can be found an illegal eviction, done in complete illegalities, and an attempt to murder Plaintiff and/or [her fiancé] in order to prevent the report of authentic federal crimes before the district court, an attempt to illegally arrest [Plaintiff's fiancé] through deception with felony charges, and many more egregiously illegal activities very similar to that of which complains at present, all presented with undeniable evidence.  For this reason, as there is no other explanation for the blatantly implemented proceedings described here, Plaintiff asserts that the actions of agents in this regard are associated

Based upon these allegations, Plaintiff has filed the instant Amended Complaint, alleging the following causes of action

> a. that Defendants violated her procedural due process rights by taking adverse action against her and causing her actual harm when they "made a determination of residency, and a determination of liability, without affording Plaintiff minimal procedural due process[;]"
>
> b. that the Department of Revenue violated her substantive due process rights when it "imitated [sic] a governmental action against Plaintiff," which harmed Plaintiff, and which was "without legal authority or personal jurisdiction[,]" and that Defendants Baxley and Crumbley failed to protect the due process rights of Plaintiff despite their purported awareness of such violation of her rights;
>
> c. that Defendants violated her rights under the Privileges and Immunities Clause when they "imposed law of the State of Alabama upon Plaintiff, though she is immune from such law as a resident of Tennessee, and was treated in a manner dissimilar than other Tennessee residents[;]"
>
> d. that Defendants violated her rights under the Fourth Amendment when they "placed a tax lien against the Plaintiff, preventing

---

> with efforts of officials in Tennessee. Many of these agents are from government offices, and Plaintiff would submit that it is from these offices that the Alabama Department of Revenue was directed to the attention of Plaintiff.

Am. Compl. (Doc. 8) at 13. Plaintiff explains that her fiancé assisted another woman, Ms. Corrine Lopez, in a legal dispute regarding the garnishment of her wages, which led to subsequent efforts to garnish the fiancé's own wages. Pl.'s Resp. (Doc. 17) at 7-8. Plaintiff's fiancé filed a federal lawsuit in the United States District Court for the Middle District of Tennessee against an entity called "Buffaloe and Associates," whom, Plaintiff alleges, is responsible for "multiple instances of abuse of the elderly[.]" *Id.* at 7-8. Plaintiff apparently believes that Defendants are in league with "Buffaloe and Associates" in this and other matters, and that Defendants have targeted Plaintiff due to her fiancé's efforts against that entity in Tennessee. *Id.*

For what it is worth, Plaintiff's fiancé's action against Buffaloe and Associates was dismissed, with prejudice, by the district court in Tennessee. *See* Order (Doc. 79), *Robinson v. Buffaloe and Associates, PLC., et al.*, 2013 WL 4017045, No. 3:13-cv-146 (M.D. Tenn. Aug. 6, 2013). His request for leave to appeal the dismissal of that suit *in forma pauperis* was denied by the United States Court of Appeals for the Sixth Circuit because "[a]n appeal in this case would be frivolous because it lacks an arguable basis in law." Order (Doc. 21-2), *Robinson v. Buffaloe and Associates, PLC., et al.*, No. 13-6192 (6th Cir. April 2, 2014). Plaintiff's fiancé's appeal was subsequently dismissed when he failed to pay the appellate filing fee. His subsequent petition for certiorari review was denied by the United States Supreme Court. *Robinson v. Buffaloe & Associates*, 135 S.Ct. 450 (Nov. 3, 2014).

her from the transfer of any property, from refinancing her home, and from making purchases with the use of her credit[;]"

  e. that Defendants violated the Fair Credit Reporting Act when they "placed a tax lien on Plaintiff's credit report, knowing in advance that there was no legal basis for the actions, fraudulently reporting the tax lien to all existing credit reporting agencies, also making a fraudulent representation that Plaintiff owes the state of Alabama taxes, or is otherwise delinquent[;]"

  f. that Defendants violated the Fair Debt Collection Practices Act when they "utilized false information and a fraudulent representation, in the attempt to collect an invalid debt, of the legal status of the debt, the amount of the debt and threatening to take action that they could not legally pursue[;]"

  g. that Defendants "conspired against the rights of the Plaintiff" in violation of a federal criminal statute;

  h. that Defendants "willfully violated the rights of the Plaintiff under color of" state law, in violation of a federal criminal statute;

  i. that Defendants "invaded the privacy rights of the Plaintiff" in violation of the Fourth Amendment and Plaintiff's substantive due process rights, and Alabama state tort law;

  j. that Defendants "willfully and intentionally committed fraud by making a fraudulent representation to Plaintiff that she owes taxes to the state of Alabama, that she was liable for such taxes, that the tax lien Defendants placed was authorized by state law, and, as to Defendants Baxley and Crumbley, by representing that they could assist Plaintiff "but, instead, acted in substantial assistance of acts that were plainly in contravention to clearly established law[;]" and

  k. that Defendants "willfully and intentionally inflicted severe emotional distress upon Plaintiff by perpetuating an illegal threat against Plaintiff's financial ability to pay for her home, utilities, insurance, food and clothing, causing Plaintiff to suffer distress beyond what a reasonable person is expected to endure, in violation of Alabama tort law."

Am. Compl. (Doc. 8) at 13-17.

## II.   DISCUSSION

Defendants move the court to dismiss Plaintiff's amended complaint under, *inter alia*, Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Defs.' Mot. (Doc. 15) at 4-7.  "[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case."  *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001).  Thus, a federal court "should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings" and, "once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue."  *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999).

A challenge asserting a lack of subject matter jurisdiction under Rule 12(b)(1) may take two distinct forms, commonly described by the Court of Appeals for the Eleventh Circuit as either a "facial" or a "factual" challenge to jurisdiction.

> Facial attacks to subject matter jurisdiction require the court merely to look and see if the plaintiff's complaint has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion. *Carmichael v. Kellogg, Brown & Root Servs., Inc.,* 572 F.3d 1271, 1279 (11th Cir. 2009).  However, in a factual challenge to subject matter jurisdiction, a district court can "consider extrinsic evidence such as deposition testimony and affidavits."  *Id.*  In so doing, a district court is "free to weigh the facts" and is "not constrained to view them in the light most favorable" to the plaintiff.  *Id.*

*Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335-36 (11th Cir. 2013).  For the reasons set forth below, no matter how Defendants' challenge to this court's subject matter jurisdiction is treated—whether construed as "facial" or "factual"—the motion is

6

due to be granted and Plaintiff's Amended Complaint is due to be dismissed for lack of subject matter jurisdiction.

Defendants argue that this court lacks subject matter jurisdiction over this action based on the Tax Injunction Act (hereinafter "TIA"), 28 U.S.C. § 1341, and comity because an adequate state remedy was available to Plaintiff to challenge the Department's assessment of taxes against her. Defs.' Br. (Doc. 15) at 4. The TIA mandates that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. Defendants argue that the adequate state remedy available to persons like Plaintiff can be found in Alabama Code sections 40-2A-7(b)(5) and 40-2A-9(g). Defs.' Supp. Br. (Doc. 23-1) at 1. Although those statutes were recently amended, effective October 14, 2014, Defendants maintain that they were in effect at all times relevant to Plaintiff's Amended Complaint, which was filed prior to the effective date of the recent amendments. Moreover, Defendants assert, "the amendment of § 40-2A-7(b)(5) and repeal of § 40-2A-9(g) pursuant to Act 2014-146 do not substantively alter the state remedy available to taxpayers." *Id*. at 2.

The TIA "is not narrowly construed to only prohibit injunctive relief designed to prohibit tax collection, but is [instead] a broad restriction on federal jurisdiction in lawsuits seeking to impede the state's administration of its tax system." *McCord v. I.R.S.*, 2003 WL 22429262, *2 (N.D. Ala. Oct. 3, 2003) (citing *United Gas Pipe Line Co. v. Whitman*, 595 F.2d 323, 326 (5th Cir. 1979)). In order for the TIA to bar federal

7

jurisdiction, "the relief requested by the plaintiff [must] 'enjoin, suspend or restrain' a state tax assessment and the state [must] afford[] the plaintiff a 'plain, speedy and efficient remedy.'" *Whitlow v. Underwood*, No. 2:10-CV-966-MEF, 2011 WL 671577, at *2 (M.D. Ala. Feb. 7, 2011) (quoting *Williams v. City of Dothan*, 745 F.2d 1406, 1411 (11th Cir. 1984)). In this case, Plaintiff was assessed Alabama state income taxes for the years of 2010 and 2011. Am. Compl. (Doc. 8) at 3. Plaintiff now claims that Alabama's assessment of those taxes, and subsequent efforts to collect the unpaid taxes, has violated several of her constitutional and statutory rights. The relief requested by Plaintiff, including injunctive, declaratory judgment, and compensatory and punitive damages, would unquestionably "enjoin, suspend, or restrain" the State's ability to assess its taxes. As such, the first factor is plainly satisfied and the court must determine whether Alabama affords a "plain, speedy, and efficient remedy" for persons wishing to challenge a tax assessment. *Underwood*, 2011 WL 671577, at *3.

In general, for there to be a "plain, speedy and efficient remedy," the state court must provide the taxpayer "a full hearing and judicial determination at which she may raise any and all constitutional objections to the tax." *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1244 (11th Cir. 1991) (quoting *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 514 (1981). "The plaintiff has the burden to show facts sufficient to overcome the jurisdictional bar of the Tax Injunction Act." *Gibson v. Gains*, 2006 WL 858336, *2 (11th Cir. April 4, 2006) (citing *Smith v. Travis Cty. Educ. Dist.*, 968 F.2d 453, 456 (11th Cir. 1992)).

Courts have long recognized that Alabama Code sections 40-2A-7(b)(5) and 40-2A-9(g) suffice as adequate state remedies to preclude jurisdiction under the TIA. *See, e.g., Gibson*, 2006 WL 858336 at \*3 (affirming district court's conclusion that § 40-2A-7(b)(5) is a "plain, speedy and efficient" remedy for purposes of the TIA); *Whitlow*, 2011 WL 671577 at \*3; *McCord*, 2003 WL 22429262 at \*2. At the time of the assessments entered against Plaintiff, § 40-2A-7(b)(5) allowed a taxpayer to appeal a final assessment to either the Administrative Law Division or to the Circuit Court of Montgomery County, Alabama. In addition, Alabama law permits a taxpayer to petition the Department of Revenue for a refund of "any overpayment of tax or other amount erroneously paid to the department or concerning any refund which the department is required to administer." Ala. Code 40-2A-7(c)(1). As with the procedure for appealing a final assessment, Alabama law permits a taxpayer whose petition for refund has been denied to appeal the denial to the Administrative Law Division or to the Circuit Court of Montgomery County. Plaintiff has not shown, and does not even argue, that the procedures for appealing a final assessment or for seeking a refund of amounts paid pursuant to the assessment would not afford her "a full hearing and judicial determination at which she may raise any and all constitutional objections to the tax." *Colonial Pipeline Co.*, 921 F.2d at 1244.[3] Indeed, this court has previously recognized the authority of an Alabama

---

[3] Another potential avenue for state court relief which Plaintiff forsook in filing this federal court action was a simple action for declaratory judgment in state court in which she could have sought to have a state court declare that her domicile was in Tennessee, rather than Alabama, for purposes of the Department's efforts to collect income taxes for 2010 and 2011. This is precisely the course utilized by the plaintiff in *Rabren v. Mudd*, 285 Ala. 531, 234 So. 2d 549 (Ala. 1970). In that case, Mudd averred that he was a resident and domiciliary of Florida, but that the Alabama Department of Revenue had demanded from

Circuit Court to hear and consider constitutional issues whether in an appeal directly from a final assessment or on review of a prior determination by the Administrative Law Division. *See Gibson v. Gains*, Civ. No. 1:04-cv-910-MHT-SRW, Doc. 46 at 9 (Recomm. Of the Mag. J., Sept. 12, 2005), *aff'd*, 2006 WL 858336.

Plaintiff appears to argue that the TIA does not apply because "the attempt to collect taxes is, in actuality, in contravention to state law, and is an unauthorized act not present in current Alabama law." Pl.'s Resp. (Doc. 17) at 3. She maintains that "Defendants do not cite, nor could they cite, which portions of Alabama law that authorizes a tax levy procedure against a W-2 employee who is such under federal law, where the liability and responsibility of such matters are strictly imposed upon the employer under state law." *Id.* Additionally, Plaintiff insists that the "Alabama Department of Revenue did not, in this instance, issue a final assessment in accordance with state law," but that, nevertheless, she has "disputed, in writing, the legitimacy of the procedure within the specified time period" and "[n]o procedure whatsoever was scheduled nor can one be shown, in compliance with state law . . . ." *Id*. at 3-4.

As to Plaintiff's first point of contention, any argument that Alabama's efforts to assess and collect income taxes against her for 2010 and 2011 is actually "in contravention to state law" is clearly better left, as a matter of comity and efficiency, to be resolved in the state courts through the procedures above identified. Furthermore,

---

him his individual federal income tax returns and declared its intent to make a final assessment of income taxes owed by him to Alabama. *Id.*, 285 Ala. at 533, 234 So. 2d at 550-51. Ultimately, the Alabama Supreme Court affirmed the trial court's determination that Mudd was a domiciliary of Florida rather than Alabama. *Id.*, 285 Ala. at 537, 234 So.2d at 555.

Plaintiff's contentions that the Department did not issue a final assessment against her and that she has disputed the preliminary assessment she received in July, 2014, without any subsequent "procedure" being afforded "in compliance with state law," are unavailing. First, Plaintiff has not shown that her written dispute of the legitimacy of the procedure followed by the Department is, in fact, compliant with Alabama law. The Amended Complaint and Plaintiff's response to the motion to dismiss indicate that Plaintiff's written objection was in response to the letter delivered to her mother's Alabama address which warned that the Department would issue a preliminary assessment in the event that she did not pay the amount the Department claimed she owed for 2011. Plaintiff does not describe what lawful procedure the State was to follow in response to her written objection to this letter, and has cited no authority for any proposition that the Department has failed to follow state law in relation to her written response. Indeed, Plaintiff's allegations do not reliably support any contention that the Department of Revenue has issued any assessment or taken any other action against Plaintiff with regard to her 2011 income taxes, which was the subject of the letter she received on July 2, 2014, and which caused her to submit the written correspondence she describes in the amended petition.

    As to Plaintiff's claim that the Department never issued a Final Assessment prior to undertaking collection measures like the lien, the court finds that, in order to fully address such assertion, it is necessary to resort to the extrinsic evidence provided by

Defendants in response to this court's Order (Doc. 26) of January 29, 2015.[4] Defendants' submissions make clear that, contrary to Plaintiff's allegations, the Department indeed did issue a final assessment prior to its placing any lien on Plaintiff's credit report. In fact, the Department issued Plaintiff a letter (dated August 28, 2013) advising Plaintiff of the amount it concluded Plaintiff owed in income taxes for 2010 (*see* Doc. 27-1 at 1), the Department then issued a Notice of Preliminary Assessment (dated October 29, 2013) concerning the 2010 income taxes owed (*see* Doc. 27-1 at 2-6), and then issued a Notice of Final Assessment of Individual Income Tax (dated January 6, 2014) concerning the 2010 income taxes owed (*see* Doc. 27-1 at 7-9). After the Notice of Final Assessment, the Department then issued its "Notice of Intent to Offset Federal Income Tax Refund" (dated March 18, 2014), indicating its intent to seek an offset from Plaintiff's federal income tax refund, pursuant to 26 U.S.C. § 6402(e), in the amount owed by Plaintiff for income taxes in 2010 (*see* Doc. 27-1 at 10-11). Next, on July 1, 2014, the Department issued a Certificate of Lien for Taxes and corresponding Taxpayer Notice of Lien, evidencing its filing of a lien in Montgomery County (*see* Doc. 27-1 at 12-13). Finally, on July 8, 2014, the Department issued its Final Notice Before Seizure, explaining its intent to begin a collections action related to the 2010 income tax debt (*see* Doc. 27-1 at

---

[4] To the extent the court's consideration of extrinsic evidence would render Defendants' challenge a "factual" challenge to Plaintiff's assertion of subject matter jurisdiction, the undersigned finds that Defendants' motion to dismiss—to the extent it is premised on the court's asserted lack of subject matter jurisdiction—does not implicate the actual merits of Plaintiff's claims under various provisions of the Constitution, federal statutory law, or Alabama state law. *See Morrison v. Amway Corp.*, 323 F.3d 920, 925-26 (11th Cir. 2003). As such, the court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case[,]" and "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the . . . court from evaluating for itself the merits of the jurisdictional issue." *Id.* at 925.

15). It is evident, therefore, that, not only did the Department issue Plaintiff a Final Assessment, but that the lien Plaintiff alleges she discovered on her credit report in July, 2014, was related to the Department's 2010 income tax assessment, not the letter concerning the Department's 2011 notice, as suggested by Plaintiff. *See* Amend. Compl. (Doc. 8) at 5, 9; Pl.'s Resp. (Doc. 17) at 3-4.

Plaintiff's response to the documents submitted by Defendants and described in this Recommendation is consistent with her overarching theory that this is all the result of a conspiracy. In short, Plaintiff submits that the documents are not authentic and that Defendants have perpetrated a fraud upon the court. Pl.'s Supp. Resp. (Doc. 28) at 5-6. However, Plaintiff's conclusion in this regard appears predicated in large part on her failure to comprehend this court's orders, as well as her failure to appreciate the narrow issue before this court. To the first point, the undersigned reminds Plaintiff that the court's Order (Doc. 26) of January 29, 2015, ordered Defendants to submit certain documents to the court for *in camera* review. Defendants fully complied with this order and submitted numerous documents responsive to the court's order. From this pool of documents, the undersigned extracted those documents considered necessary to fully resolve the jurisdictional issue posed by Defendants' motion to dismiss and Plaintiff's response thereto and ordered that they be provided to Plaintiff so that she may file a supplemental response to the motion to dismiss. *See* Order (Doc. 27). The undersigned did not make available to Plaintiff all of the documents submitted by Defendants because they were not all germane to the court's jurisdictional inquiry. Indeed, the undersigned

clarified in that Order that those documents not made available to Plaintiff would be destroyed. Plaintiff is therefore misguided in her repeated charge that Defendants' documents are incomplete or somehow fail to evidence matters she deems material in this case. *See, e.g.,* Pl.'s Supp. Resp. (Doc. 28) at 1-2 ("Defendants could be [sic] no means explain how they acquired the Plaintiffs [sic] name, address, social security number, income and evidence of tax liability with the current documentation they submit."); *id.* at 4 ("Being that there is absolutely no such documentation before the Court because Defendants are utterly unable to produce such, it must also then be seen that these documents are facially fraudulent by default."). In other words, Plaintiff infers what Defendants have failed to produce at her own peril because she does not know the entirety of Defendants' production, and she is therefore ill-advised to charge Defendants with committing fraud upon the court when she is not fully informed on the matter.

To the second point—Plaintiff's failure to appreciate the limited nature of this court's inquiry—the undersigned will endeavor to offer a few observations. Plaintiff's pleadings indicate, from the beginning, a preoccupation with how and why Defendants have decided to pursue recovery of taxes they assert she owes. *See, e.g.*, Am. Compl. (Doc. 8) at 3-4; Pl.'s Supp. Resp. (Doc. 28) at 2-3, 4. As previously noted, she attributes Defendants' actions to a conspiracy motivated by her fiancé's actions in Tennessee. For Plaintiff, the failure of Defendants to satisfactorily answer her questions about how they focused their attention on her, and the omission of documents evidencing that circumstance in the records made available to her, presents a sort of "confirmation bias"

for the conspiracy theory she has articulated in her papers. But why and how the Department of Revenue has focused on Plaintiff is simply immaterial to this court's present inquiry. Rather, this court must first satisfy itself that it may exercise subject matter jurisdiction in this matter despite the dictates of the TIA. As such, the court is not troubled by the purported lack of records decried by Plaintiff because, contrary to Plaintiff's apparent belief, the court did not order Defendants to turn over all documents relating to any investigation of Plaintiff's income tax liability and, more to the point, such documents are not relevant to this court's limited jurisdictional inquiry. This is not to minimize those issues which legitimately have been raised by Plaintiff. There is perhaps a legitimate question whether Plaintiff should be subject to income taxation in Alabama for 2010 and 2011.[5] However, that is a question that, pursuant to applicable federal law, is plainly due to be decided in Alabama's state courts.[6]

---

[5]   The ultimate issue of whether Plaintiff should be subject to income taxation in Alabama in 2010 and 2011 is, even if a legitimate question, not as cut-and-dry as Plaintiff appears to believe. Plaintiff's Amended Complaint makes clear that she believes she cannot be subject to taxation in Alabama because she has been living and working in Tennessee since 2007. *See* Am. Compl. (Doc. 8) at 3-4. However, the issue is more nuanced than Plaintiff portrays it to be. Alabama law provides that, in addition to persons actually residing in or conducting business in Alabama, persons "domiciled" in Alabama "shall be presumed to be residing within the state for the purposes of determining liability for income taxes[.]" Ala. Code § 40-18-2(b). The legal question of domicile is more exacting than simply determining where someone is living at a given time. In *Whetstone v. State, Dep't. of Rev.*, 434 So. 2d 796, 797 (Ala. Civ. App. 1983), for example, the Alabama Court of Civil Appeals addressed the issue of domicile in an income tax case.

> Domicile once acquired is presumed to exist until a new one has been acquired. In order to displace the former, original domicile by acquisition of a new domicile, actual residence and intent to remain at the new domicile must both concur. A change of domicile cannot be inferred from absence, temporary or due to employment, where there is an intent to return. The intent to return is usually of controlling importance.

In view of the evidence described in this Recommendation, the undersigned concludes that, consistent with Alabama law, the Department of Revenue endeavored to notify Plaintiff of its assessment that she owes income taxes to Alabama for 2010 and 2011.[7]  Coupled with the undersigned's finding that Alabama law affords taxpayers an

---

> One who asserts a change of domicile has the burden of establishing it, and where the facts are conflicting, the presumption is strongly in favor of an original, or former domicile, as against a newly acquired one.
>
> Actual physical residence on a day to day basis is not required.

*Id.* (citations omitted).  Against this backdrop, it is at least conceivable why the Department might assert that Plaintiff remains a domiciliary of Alabama, given that she has maintained an Alabama driver's license for seven years.  Indeed, because Alabama law requires that, "[a]fter the expiration of an original driver's license, all subsequent renewals shall be for a period of four years[,]" Ala. Code § 32-6-1(b), it even appears that Plaintiff has renewed her Alabama license since she began living and working in Tennessee.  Furthermore, even Plaintiff analogizes herself with persons who live in one state but arguably remain domiciled in another state.  She argues that "collegians," just like someone in her position, might "maintain a license in their *home* state, while maintaining residency and employment in another state[.]" Am. Compl. (Doc. 8) at 9 (emphasis supplied).  However, pursuant to the above recited tenets of Alabama law, such "collegians" arguably remain domiciled in their "home" states for purposes of the application of Alabama's income tax laws.  While the court expresses no opinion on the ultimate merit of Plaintiff's argument that she is not subject to Alabama income tax, it is important to stress that the question simply is not as conclusive as she believes it to be.

[6]  Apart from this perhaps legitimate question, the undersigned finds Plaintiff's conspiracy theory particularly unconvincing.  Plaintiff fails to explain, and the undersigned cannot fathom, why the Alabama Department of Revenue and its agents would know or care about her fiancé's litigation against Buffaloe & Associates in Tennessee or why they would commit numerous purported civil and criminal violations, as well as fraud upon this court, in retaliation over such litigation, especially considering that the Tennessee suit was dismissed in the District Court and in the Court of Appeals prior to the July, 2014, events which, Plaintiff alleges, effected the violations of Plaintiff's rights described in the Amended Complaint.  Likewise, even putting aside Plaintiff's bizarre and, frankly, paranoid allegations of a conspiracy motivated by animus over dismissed litigation against separate and unrelated parties in another State, Plaintiff has failed to explain why the Alabama Department of Revenue and its agents would commit numerous civil and criminal violations, as well as fraud upon this court, in an effort to collect from Plaintiff an amount totaling less than $3,000 (prior to penalties, interest, and late filing fees), i.e., the combined amount the Department claims she owes for 2010 and 2011.  In any event, Plaintiff's belief in such conspiracies, no matter how genuine, is insufficient to thwart or even cloud this court's obligation to inquire into its jurisdiction, much less to carry her burden to sufficiently plead and sustain any claims predicated on such alleged conspiracies.

[7]  Another point Plaintiff raises with respect to the remedies the Department asserts were available to her is that, even if taken as authentic, the documents Defendants submitted tending to show the Department's

adequate "plain, speedy, and efficient remedy" for contesting such assessments, including raising any constitutional objections to such assessments, the undersigned concludes that this court lacks subject matter jurisdiction over the claims in Plaintiff's Amended Complaint and that, therefore, Defendants' motion to dismiss the Amended Complaint pursuant to Rule 12(b)(1) is due to be granted.

## IV. CONCLUSION

For the reasons stated above, it is the RECOMMENDATION of the Magistrate Judge that Defendants' Motion to Dismiss (Doc. 15) be GRANTED and that this case be

---

efforts to inform Plaintiff of the preliminary and final assessments "demonstrate that . . . there presently exist no adequate state remedy to redress the present circumstances, as presented, since all remedies would be currently expired." Pl.'s Supp. Resp. (Doc. 28) at 6. But, as Defendants have argued, there is authority in this District holding that a taxpayer's failure to timely appeal a final assessment pursuant to the state law provisions allowing such an appeal does not render Alabama's remedies inadequate for purposes of the TIA. *See Lasker Boiler and Engineering Corp. v. Hamm*, 216 F.Supp. 74, 76 (M.D. Ala. 1963) (Johnson, C.J.), *aff'd*, 328 F.2d 429 (5th Cir. 1964).

Alabama law requires only that the Department attempt to mail a preliminary or final assessment to "the taxpayer's last known address." Ala. Code § 40-2A-7(b)(3) & (4)c. It is evident that Defendants attempted to provide Plaintiff with notice of the preliminary and final assessments for 2010, as those documents were mailed to her at an address in Goodlettsville, Tennessee. *See* Exh. 1-9, Order (Doc. 27-1). While Plaintiff adamantly questions how the Department might have obtained this address, and infers some nefarious conduct or purpose in its having done so, she does not appear to dispute that this was indeed her address at some point in the recent past, even if it was not her address during the months in 2013 and 2014 when the Department mailed the documents to the Tennessee address. Moreover, it is evident that this address has long been associated with Plaintiff's fiancé, as it appears on the federal court docket sheets for numerous of his various federal lawsuits in recent years. *See, e.g., Robinson v. E and R Auto Sales, Inc., et al.*, No. 3:09-cv-1073 (M.D. Tenn. dismissed Dec. 23, 2009); *Robinson v. Tenn. Dept. of Corr., et al.,* No. 1:10-cv-017 (M.D. Tenn. dismissed Mar. 19, 2010); *Robinson v. Industrial Staffing, et al.,* No. 3:09-cv-620 (M.D. Tenn. dismissed Aug. 13, 2010). Indeed, in each of these actions, there are documents on the docket reflecting that Plaintiff herself signed mail receipts on her fiancé's behalf when court orders were delivered to the Goodlettsville, Tennessee, address. *See Robinson v. E and R Auto Sales, Inc., et al.*, No. 3:09-cv-1073 (Doc. 8, entered Jan. 4, 2010); *Robinson v. Tenn. Dept. of Corr., et al.,* No. 1:10-cv-017 (Doc. 20, entered June 7, 2010); *Robinson v. Industrial Staffing, et al.,* No. 3:09-cv-620 (Doc. 126, entered June 23, 2010). As these documents make clear, there is no basis upon which to question the Department's representation that the Goodlettsville, Tennessee, address was the last known address it had for Plaintiff when it mailed various documents to her in 2013 and 2014.

DISMISSED, pursuant to Federal Rule of Civil Procedure Rule 12(b)(1), for lack of subject matter jurisdiction.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **April 14, 2015**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive, or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); s*ee Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 31st day of March, 2015.

                                                    /s/ Wallace Capel, Jr.
                                                    WALLACE CAPEL, JR.
                                                    UNITED STATES MAGISTRATE JUDGE